# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JUAN CARLOS SANTIAGO,

    Plaintiff,

    v.                                               Case No. 11-CV-1024

DAVID A. CLARKE, JR.,
R. SCHMIDT, and
K. NYKLEWICZ,

    Defendants.

## DECISION AND ORDER ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Juan Carlos Santiago, appearing *pro se*, filed a complaint under 42 U.S.C. § 1983 claiming that Milwaukee County Jail officials David A. Clarke, Jr., R. Schmidt and K. Nyklewicz kept him in segregation at the Milwaukee County Correctional Facility - Central for a period of four months in violation of his constitutional rights. He seeks $550,000 in damages for his suffering.

    Presently before the Court are motions for summary judgment filed by both the plaintiff and the defendants. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73 (E.D. Wis.). For the reasons stated below, the Court denies the plaintiff's motions for summary judgment and finds the defendants are entitled to summary judgment.

## BACKGROUND

    On November 4, 2011, the plaintiff filed a sworn complaint against Milwaukee County Jail officials. He averred that he was placed in segregation pursuant to a criminal court order that prohibited his access to the telephone, mail, and visits. He further averred that after his criminal case

was resolved, the court lifted the segregation order and modified the conditions to allow him to visit with his brother and adult daughter. He averred that, despite the change in the court order, jail officials kept him in segregation. He states that Lt. Sadowski informed him that he was kept in segregation because there was no other place to monitor that his contacts were only with his brother and his daughter. The plaintiff maintains that he should have been placed in general population because jail officials are able to monitor the phone calls and mail of the general population.

On December 28, 2011, this Court entered an initial screening order allowing the case to proceed. On February 27, 2012, the defendants answered the complaint, admitting that the plaintiff was placed in segregation but denying any wrongdoing.

On March 19, 2012, the plaintiff filed a one page Motion For Summary Judgment in which he stated that based on the undisputed facts he "must win." He also stated that the defendants violated a court order by keeping him in segregation for an extra four months and presented no excuse for doing so. The plaintiff generally references jail request forms through which he tried to bring the problem to jail personnel, a copy of his grievance, an inmate handbook, and a July 26, 2011 court order. But no affidavits or other evidence were attached to this motion.

On March 26, 2012, the plaintiff filed a document entitled Statement of Claim. This unsworn statement repeated the averments in the plaintiff's complaint. He added that the jail received a court order dated July 26, 2011, stating that the segregation order was lifted and the order was modified to allow him contact with his brother and daughter. He repeated that the jail official told him that they had no place to put him except segregation where they could monitor his use of the phone, visits, and mail. The plaintiff submitted that the Inmate Handbook indicates that the jail can in fact monitor the phone use, visits, and mail of the general population.

On April 11, 2012, the defendants responded to the plaintiff's motion for summary judgment.

The defendants argued that the plaintiff failed to show that he is entitled to judgment as a matter of law. Specifically, the defendants argued that the plaintiff failed to provide evidence of facts that he claimed were undisputed. The defendants also argued that the plaintiff's claim that the defendants violated the court order, that the plaintiff did not break any rules, and that he was kept in maximum custody for an extra four months were untrue and disputed by court orders and other documentary evidence.

The plaintiff filed another motion for summary judgment on April 17, 2012. (Docket No. 24). This was docketed as a "statement captioned as motion for summary judgment," but it was intended to be a motion. He again argued that the undisputed facts demonstrate that he must win this case. This motion was accompanied by an affidavit and letter to the Court, as well as several documents. However, none of these documents were notarized or contained the language required for unsworn declarations.

On April 18, 2012, the Court received a document called an affidavit from the plaintiff. Again, though, this document was not notarized and does not contain the language required for unsworn declarations.

On May 2, 2012, the plaintiff filed a reply to the defendants' Motion For Summary Judgment. He stated that his status changed once the court lifted the segregation and allowed him contact with his brother and his daughter. He further stated that the defendants kept the plaintiff in segregation with other inmates who were restricted to no contact at all and that he was kept in segregation with no daily exercise, library, clock, school or programs. No affidavit or other evidence was attached to this response.

On June 5, 2012, the plaintiff filed two documents, one entitled "Affidavit" and one entitled "Proposed Findings of Fact." The documents were not notarized and did not contain the required

- 3 -

language for unsworn statements. The purported affidavit attached a copy of the July 26, 2011 court order.

The defendants filed their own motion for summary judgment on June 6, 2012, and relied on the supporting documents from their response to the plaintiff's original summary judgment motion. These included the Affidavit of Roy L. Williams, with exhibits A- G, and the Affidavit of Cynthia Nowakowski, a Correctional Officer with the Milwaukee County Office of the Sheriff. Nowakowski had reviewed the Milwaukee County Sheriff's computer files regarding the plaintiff's incarceration in the County Correctional Facilities. The defendants argued that they were entitled to judgment as a matter of law because it is undisputed that the plaintiff was placed in segregation as a managerial decision in order to monitor his communications to comply with the restrictions from the July 26, 2011 court order.

On June 29, 2012, the plaintiff filed two more unsworn documents entitled "Affidavit" and "Proposed Findings of Fact," in which the plaintiff reiterates his earlier arguments. Attached to the purported affidavit are several documents, including the July 26, 2011 court order, a maximum/protective custody status report, a computer printout information from County Correctional Facility, and a portion of the inmate handbook.

On January 3, 2013, following his release from custody, the plaintiff filed a statement of claim, proposed findings of fact, and a notarized affidavit, with several documents attached. Most of these documents were already in the court's record.

Finally, very recently, on February 4, 2013, the Court received another motion for relief from the plaintiff. In this motion, the plaintiff once again requests that the Court grant his motion for summary judgment. He argues that he must win the case because the evidence shows that the defendants violated a court order and admitted to the wrongdoing. Once again, the plaintiff's motion

is not accompanied by any admissible evidence.

## ANALYSIS

*1. Summary Judgment Standard*

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

*2. Plaintiff's Motion For Summary Judgment*

Motions for summary judgment must comply with Federal Rule of Civil Procedure 56 and Civil Local Rule 7. *See* Civil L. R. 56(b) (E.D. Wis.). In addition, they must meet the requirements of Civil Local Rule 56(b)(1). *Id.*

- 5 -

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asserting that a fact cannot be genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the . . . presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

In this case, the plaintiff has not supported the assertions he relies on in any of his motions with evidence from the record. The documents the plaintiff calls affidavits are not notarized. Nor do they contain the "under penalty of perjury" language that can transform an unsworn declaration into evidence. 28 U.S.C. § 1746. As a result, this Court may not consider as evidence any facts set forth in the plaintiff's unsworn motions or affidavits or any documents submitted with those unsworn motions or affidavits.

Additionally, Civil Local Rule 56(b)(1) requires that parties moving for summary judgment must file a memorandum of law, a statement setting forth any material facts to which all parties have stipulated, a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law, and any affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c).

The plaintiff is proceeding *pro se* in this case, and the court liberally construes his pleadings, but the procedural rules in civil litigation still apply to *pro se* litigants. *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005). "[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the

law." *Id.* (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)). The plaintiff has failed to comply with the procedural requirements for motions for summary judgment, and he has not supported his assertions with evidence. As a result, his motions must be denied.[1]

### 3. *Defendant's Motion For Summary Judgment*

The plaintiff was allowed to proceed on a due process claim and a class of one equal protection claim. The defendants argue that they are entitled to summary judgment because the state court's restrictions on the plaintiff's communications and contact required careful monitoring that could only be managed if the plaintiff was separated from the general population. They maintain that the plaintiff had to be placed in segregation to comply with the court's communication restrictions and that compliance with the court order was a rational basis for the placement. After setting forth the undisputed facts, the Court will address each claim in turn.

### 3.1. *Undisputed Facts* [2]

On May 15, 2011, Milwaukee County Circuit Judge Mary E. Triggiano issued an order eliminating the plaintiff's telephone, visitation, and U.S. Mail privileges. (Defendants' Proposed Findings of Fact "DPFOF" ¶ 3.) The next day, the plaintiff was transferred to 4D with General Population with Restrictions (GPR) status.[3] (*Id.* ¶ 4.) On June 9, 2011, Judge Triggiano orally

---

[1] Even if the plaintiff's motions had not been procedurally deficient, the arguments and factual information presented do not alter the material facts regarding his claims. For the reasons discussed in Section 3, the defendants still would be entitled to summary judgment if the Court considered the plaintiff's motions on the merits.

[2] The Undisputed Facts come from the plaintiff's sworn complaint and the affidavits and evidence submitted by the defendants. Although the plaintiff did not submit any sworn evidence in support of his motion for summary judgment or in response to the defendants' motion for summary judgment, the plaintiff's complaint was sworn and will be construed as an affidavit for the purposes of the defendants' motion for summary judgment. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996). Additionally, the Court has reviewed and considered the documents submitted by the plaintiff on January 3, 2013 which were attached to and authenticated by a notarized affidavit.

[3] This is also referred herein as "segregation."

modified the restrictions. (*Id.* ¶ 5.) She allowed the plaintiff contact with his 18-year old daughter and his brother. (*Id.*)

In an order dated July 26, 2011, Judge Triggiano memorialized her June 9 oral order. (Affidavit of Roy L. Williams, Exhibit D.) In the body of the order Judge Triggiano explained:

> On May 16, 2011, the court signed an order rescinding the [plaintiff's] telephone, visiting and U.S. mail custody privileges pending the prosecution of these cases and ordered his segregation at the jail to ensure that the order was followed.[4] At sentencing on June 9, 2011, the court withdrew the May 16, 2011 order and ordered that the segregation order be lifted. The court further ordered that the [plaintiff] may only have contact with his 18-year old daughter or his brother at this time. This order memorializes the orders that were orally entered at the sentencing hearing on June 9, 2011.

(*Id.*)

On July 29, 2011, the plaintiff's status was changed to "Disciplinary" after a hearing related to his tampering with fire extinguishers in the jail. (DPFOF ¶ 6.) The plaintiff's status was changed back to GPR when he completed his discipline period on August 10, 2011. (*Id.* ¶ 7.)

The plaintiff was not released from GPR status (or segregation) until November 11, 2011, when Judge Triggiano entered another order restoring the plaintiff's status as an inmate in general population. (DPFOF ¶ 8-9.) In this order, Judge Triggiano wrote:

> The court has been informed that provision 3 of the court's July 26, 2011 order has had the effect of keeping the [plaintiff] in segregation status and forbidding the defendant telephone, mail and visits. This was not the court's intention.

(Affidavit of Roy L. Williams, Exhibit F.) Then, to clarify the court's intent, she ordered: (1) "[t]he [plaintiff's] mail and telephone privileges be restored to the status of an inmate in the general population;" (2) "[t]hat the [plaintiff] be removed from Segregation and placed in the general

---

[4] For clarity, the order was actually signed on May 15, 2011. (Affidavit of Roy L. Williams, Exhibit A..)

- 8 -

Case 2:11-cv-01024-NJ   Filed 02/11/13   Page 8 of 14   Document 45

population;" and (3) "[t]hat the [plaintiff] be allowed visits from his brother or his eighteen year old daughter." (*Id.*) Judge Triggiano further directed that the plaintiff be forbidden from having any other civilian visitors. She also noted, "[n]othing in this order restricts the Milwaukee County House of Corrections from enforcing its own rules as they relate to the confinement of Mr. Santiago." (*Id.*)

Correctional Officer Cynthia Nowakowski averred, "As a practical matter, deputies and correctional officers are unable to monitor the nature of contact an inmate has when placed in general population." (Affidavit of Cynthia Nowakowski, ¶ 4.) Nowakowski submits that "Mr. Santiago was treated as if he were in general population in every way with the exception of being allowed to mingle with inmates in general population." (*Id.*)

### 3.2 Due Process

During the relevant time, the plaintiff was a pretrial detainee. "The scope of an individual's right to be free from punishment . . . hinges in his status within the criminal justice system." *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). Pretrial detainees have not been convicted or sentenced yet and may not be punished by the state in any way. *Id.* "A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002). "But no process is required if he is placed in segregation not as punishment but for managerial reasons." *Id.*

The plaintiff did not have a due process hearing at the jail before he was placed on GPR status as a result of Judge Triggiano's order.[5] That is undisputed. Plaintiff maintains that the admission that he was placed in segregation and kept there even after Judge Triggiano ordered his segregation lifted

---

[5] He did, however, have a hearing when he was placed in segregation for tampering with the fire extinguishers. (Affidavit of Roy L. Williams, Exhibits B-D.) The plaintiff has not submitted evidence to the contrary.

on June 9, 2011 is sufficient for him to win his case. That is not so. To establish a right to due process, a pretrial detainee must demonstrate either (1) an "expressed intent to punish on the part of detention facility officials" or (2) that the challenged condition or restriction lacked a reasonable relationship to a legitimate, non-punitive administrative purpose. *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979); *see also Love v. Kirk*, 360 Fed. Appx. 651, 653 (7th Cir. 2010). The plaintiff presented no evidence to contradict the defendants' sworn affidavits that the plaintiff's placement on GPR status was nonpunitive and done to comply with the communication restrictions imposed by Judge Triggiano. Indeed, the undisputed evidence shows that even after the order was modified on June 9, 2011 to allow the plaintiff contact with his brother and daughter, the restrictions on the plaintiff's telephone and mail privileges remained in effect until the court removed them on November 11, 2011. (The prohibition against civilian visitors other than his brother and daughter remained even after the November 11, 2011 order.) (Affidavit of Roy L. Williams, Exhibit F.)

"Absent proof of any jail officials' express intent to punish him, [the plaintiff's] only alternative under *Bell*, then, depends on his ability to establish that his segregation was either arbitrary or not reasonably related to a legitimate, non-punitive administrative purpose." *Love*, 360 Fed. Appx. at 654. To the extent that the plaintiff's argument that monitoring his restrictions could have been accomplished in the general population is a claim of arbitrariness, he presented no admissible evidence to support that claim. Rather, the evidence in the record shows that the placement was reasonably related to the legitimate, non-punitive administrative purpose of complying with Judge Triggiano's communication restrictions. This Court must rely on the defendants' uncontradicted averments that "[a]s a practical matter, deputies and correctional officers are unable to monitor the nature of contact an inmate has when placed in general population" and "Mr. Santiago was treated

as if he were in general population in every way with the exception of being allowed to mingle with inmates in general population." (Affidavit of Cynthia Nowakowski, ¶ 4.)

Even though the Inmate Handbook indicates that telephone and mail of all inmates are monitored, this does not defeat the defendants' averments that "as a practical matter" the plaintiff was kept in segregation, rather than general population, to monitor the court ordered restrictions. Jail administrators are accorded great deference in the areas of internal order and security. *Azeez v. Fairman*, 795 F.2d 1296, 1298 (7th Cir. 1986). This Court must defer to the jail official's determination that they could not monitor or control the plaintiff's communications in the general population. Accordingly, the defendants are entitled to summary judgment on this claim.

That said, Judge Triggiano's frustration with the plaintiff's continued placement in segregation after June 9 is evident in her subsequent orders.[6] Although this Court understands the frustration of Judge Triggiano and the plaintiff, again, "wide-ranging deference" must be given to the decisions of jail administrators. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).

This Court notes, however, that even an administrative detention cannot go on indefinitely. In *Love*, the Seventh Circuit approved one year of administrative segregation for an inmate who attempted to solicit the murder of a police officer involved in his arrest. *Love*, 360 Fed. Appx. at 652. But more recently, the Seventh Circuit addressed the distinction in *Higgs* "between placing a pretrial detainee in segregation not as punishment but for managerial reason that would not require notice and a hearing." *Miller v. Dobier*, 634 F.3d 412, 415 (7th Cir. 2011) (quotation omitted). The Seventh Circuit acknowledged in *Miller* the need in some cases to take action immediately, without time for notice and a hearing. Yet it also cautioned, "[w]e did not mean to suggest that once the emergency

---

[6] It appears that the judge did not understand that despite ordering that segregation be lifted that the order of limiting plaintiff's contact to his brother and daughter would have the practical effect of keeping him in segregation. (Affidavit of Roy L. Williams, Exhibit F.)

- 11 -

was past, the jail could nevertheless keep the prisoner in segregation indefinitely without providing the procedural safeguards encapsulated in the term 'due process' because it was not 'punishing' him, if conditions in the segregation unit were so much more restrictive than those in the rest of the jail as to constitute an actionable incremental deprivation of liberty." *Id.* at 415.

In this case, the plaintiff's placement in segregation was not in response to an emergency situation, but to comply with restrictions in a court order. The court-ordered communication restrictions continued for just over five months, the duration of the plaintiff's time on GPR status. (This excludes the time period when plaintiff was in segregation for discipline violation.) Additionally, the defendants presented evidence, though conclusory, that the plaintiff "was treated as if he were in general population in every way with the exception of being allowed to mingle with inmates in general population." (Affidavit of Cynthia Nowakowski, ¶ 4.) At some point, though, an indefinite placement in a segregation unit with conditions more restrictive than those in the rest of the jail will constitute an actionable incremental deprivation of liberty that requires due process. *See Miller*, 634 F.3d at 415.

### 3.3 *Class of One Equal Protection*

The plaintiff also was allowed to proceed on a class of one equal protection claim because he averred in his complaint that other inmates were returned to the general population when their no contact orders were lifted, but he was kept in maximum custody.

The traditional function of the Equal Protection Clause of the Fourteenth Amendment is to "guard against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). "The Equal Protection Clause has also come to be understood to protect individuals against purely

- 12 -

arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes." *Id.* To state a class of one equal protection claim, plaintiff must allege that he was "treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

In support of their motion for summary judgment, the defendants articulated a rational basis for keeping the plaintiff in segregation. They presented evidence that they could not comply with the court's order regarding the plaintiff's communications (only with plaintiff's 18-year old daughter and his brother) if the plaintiff was in the general population. Because there was a rational basis for keeping the plaintiff in segregation, the defendants are entitled to summary judgment on the plaintiff's class of one equal protection claim.

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion for summary judgment (Docket # 20) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (Docket # 24) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for relief (Docket # 44) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket # 33) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of February, 2013.

>BY THE COURT
>
>*s/Nancy Joseph*
>NANCY JOSEPH
>United States Magistrate Judge